**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**SOUTHBRIDGE 21 LLC,**

              **Plaintiff,**　　　　　　　　3:14-cv-374
　　　　　　　　　　　　　　　　　　　　　　(GLS/DEP)

              v.

**THE STANDARD FIRE
INSURANCE COMPANY,**

              **Defendant.**
_____

**APPEARANCES:**　　　　　　　　　**OF COUNSEL:**

**FOR THE PLAINTIFF:**
Hinman, Howard Law Firm　　　　　RICHARD C. LEWIS, ESQ.
P.O. Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902-5250

**FOR THE DEFENDANT:**
Bond, Schoeneck Law Firm　　　　　SUZANNE O. GALBATO, ESQ.
One Lincoln Center
Syracuse, NY 13202

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Southbridge 21 LLC commenced this diversity action against

defendant Standard Fire Insurance Company, alleging breach of contract

and "willful[] and negligent[] refus[al] to bargain in good faith." (Compl., Dkt. No. 1.) Pending is Standard Fire's motion for partial dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 8.) For the reasons that follow, the motion is granted.

## II. Background

### A. Facts[1]

In 2011, Standard Fire issued a Standard Flood Insurance Policy (SFIP), pursuant to the National Flood Insurance Act[2] (NFIA), to Southbridge. (Compl. ¶ 9; Dkt. No. 1 at 7, 9-27.) The SFIP policy period ran from July 16, 2011 to July 16, 2012, and provided $250,000 of coverage for Southbridge's Binghamton, New York, business property, and an additional $50,000 of coverage for the contents of the property. (Compl. ¶¶ 11-13.) In September 2011, as a result of a flood caused by Tropical Storm Lee, the property was damaged in the amount of $472,000. (*Id.* ¶¶ 14, 15.) Thereafter, Southbridge filed a timely notice of loss, and complied with the requirements of the SFIP. (*Id.* ¶ 16.) After conducting its own investigation, however, Standard Fire failed to tender the full amount

---

[1] The facts are drawn from Southbridge's complaint and presented in the light most favorable to it.

[2] *See* 42 U.S.C. §§ 4001-4130.

of the coverage available under the policy or "bargain in good faith," despite Southbridge's repeated demands that Standard Fire tender the full amount and requests that Standard Fire "amicably settle" with Southbridge. (*Id.* ¶¶ 17, 20-22, 25, 28.)

**B.     Procedural History**

Southbridge commenced this action on April 4, 2014.  (*See generally* Compl.)  In its complaint, Southbridge asserts two causes of action: (1) breach of contract and (2) "willful[] and negligent[] refus[al] to bargain in good faith."  (*Id.* ¶¶ 8-23, 24-30.)  On June 2, 2014, Standard Fire filed the now-pending pre-answer partial motion to dismiss, seeking dismissal only of Southbridge's second cause of action, along with Southbridge's requests for extra-contractual damages, costs, and disbursements.  (Dkt. No. 8; Dkt. No. 8, Attach. 1 at 2.)

### III.  Standard of Review

The standard of review applicable to Fed. R. Civ. P. 12(b)(6) motions is well settled and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

## IV. **Discussion**

In brief, relying on "[a] national body of case law," Standard Fire argues that, under the National Flood Insurance Program (NFIP), the only remedy available for contesting flood coverage determinations is one for breach of contract, alleging breach of the SFIP. (Dkt. No. 8, Attach. 1 at 4-7.) In response, relying on only one case from the District of Connecticut, and impermissibly attaching affidavits and exhibits to its opposition papers,[3] Southbridge contends that the NFIA's regulations specifically contemplate extra-contractual claims, such as negligence claims, rendering dismissal of its second cause of action inappropriate. (Dkt. No. 13 at 3-6.) The court agrees with Standard Fire.

Below, the court first briefly discusses the interplay between the NFIP and private insurance companies, and then addresses the merits of the parties' arguments.

---

[3] On a motion to dismiss under Rule 12(b)(6), courts "do not consider matters outside the pleadings." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013). Here, however, in its opposition to Standard Fire's motion to dismiss, Southbridge submitted an affidavit from one of its Members, and attached as exhibits several emails and letters. (Dkt. No. 11.) The court does not consider these additional submissions here, but notes that, at best, they merely shed light on the facts and circumstances surrounding, and the basis for, Southbridge's second cause of action, which, as initially pleaded, is vague and amorphous.

## A. The National Flood Insurance Program

The NFIP was created in 1968 by the NFIA in order to make it more economic for the private insurance industry to make flood insurance available to those who need it, "on reasonable terms and conditions." 42 U.S.C. § 4001(b); *see Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 183 (2d Cir. 2006). The NFIP is administered by the Federal Emergency Management Agency (FEMA), and is "supported by the federal treasury, which pays for claims that exceed revenues collected by private insurers from flood insurance premiums." *Palmieri*, 445 F.3d at 183 (citation omitted). Thus, "an insured's flood insurance claims are ultimately paid by FEMA." *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 947 (6th Cir. 2002) (quoting *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 166-67 (3d Cir. 1998)).

FEMA is authorized to "prescribe regulations establishing the general method or methods by which proved and approved claims for losses may be adjusted and paid for any damage to or loss of property which is covered by flood insurance." 42 U.S.C. § 4019(a). "Pursuant to its authority under 42 U.S.C. § 4081(a), FEMA created the [Write Your Own] [(]WYO[)] Program, which allows private insurers, also known as 'WYO

companies,' to issue and administer flood-risk policies under the NFIP." *Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 672 F.3d 171, 174-75 (2d Cir. 2012); *see* 44 C.F.R. Pt. 62, app. A. As the Third Circuit has explained, while "FEMA regulations require a WYO company to defend claims," "FEMA will reimburse the WYO company for defense costs," and "[a]fter a WYO company depletes its net premium income, FEMA reimburses the company for the company's claims payments." *Van Holt*, 163 F.3d at 166. Thus, while the private insurance companies administer the federal program, "[i]t is the Government, not the companies, that pays the claims," *Palmieri*, 445 F.3d at 184, and, therefore, "a lawsuit against a WYO company[,]" like Standard Fire in this case, "is, in reality, a suit against FEMA," *Van Holt*, 163 F.3d at 166-67.

WYO companies, thus, act as "fiscal agents of the United States," 42 U.S.C. § 4071(a)(1), "but they are not general agents and therefore must strictly enforce the provisions set out in the regulations, varying the terms of a policy only with FEMA's express written consent." *Jacobson*, 672 F.3d at 175 (citing 44 C.F.R. §§ 61.4(b), 61.13(d)(e), 62.23(c)-(d)). Notably, the flood insurance policies issued by WYO companies all have the same terms and conditions as the SFIP here; indeed, the standard terms and

6

conditions are codified regulations. *Compare* 44 C.F.R. pt. 61. app. A(2), *with* (Dkt. No. 1 at 10-27.)

B. **Southbridge's Second Cause of Action**

Standard Fire seeks to dismiss Southbridge's second cause of action, arguing that any extra-contractual claims are preempted by federal law. (Dkt. No. 8, Attach. 1 at 4-7.) Southbridge counters that its second cause of action is cognizable under FEMA's regulations. (Dkt. No. 13 at 3-6.) Again, the court agrees with Standard Fire.

The Second Circuit has noted that the FEMA regulations explicitly state that "all disputes arising from the handling of any claim under [a NFIP] policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended, and Federal common law."[4] *Jacobson*, 672 F.3d at 174 (quoting 44 C.F.R. pt. 61, app. A(1), art. IX). Accordingly, absent authorization by the NFIA and/or the SFIP, an insured may not assert extra-contractual claims against a WYO company.

Although the Second Circuit has not spoken on this issue, other

---

[4] Southbridge does not contend that its second cause of action is rooted in federal common law, but apparently concedes that it is indeed rooted in state law. (*See generally* Dkt. No. 13.) The court, therefore, confines its analysis to whether the NFIA preempts extra-contractual state law claims.

7

circuits have held that the NFIA does not expressly authorize insureds to bring extra-contractual state law claims[5] related to the handling of a claim.[6] *See Wright v. Allstate Ins. Co.*, 415 F.3d 384, 389-90 (5th Cir. 2005) (*Wright I*") (holding that state law tort claims arising from claims handling by a WYO are preempted by federal law); *Wright v. Allstate Ins. Co.*, 500 F.3d 390, 394 (5th Cir. 2007) ("*Wright II*") ("Even though the NFIA does allow a policyholder to sue a WYO insurer for amounts due under the contract, nowhere in the NFIA or the SFIP does Congress explicitly reference any right of a policyholder to bring extra-contractual claims against a WYO insurer."); *C.E.R. 1988, Inc. v. The Aetna Cas. & Sur. Co.*, 386 F.3d 263, 270-72 (3d Cir. 2004) (holding that the NFIA preempts state law and "conclud[ing] that the application of state tort law would impede Congress's

---

[5] As mentioned above, *see supra note* 3, the basis of Southbridge's second cause of action, as pleaded, is unclear. While Standard Fire casts it as "sound[ing] in breach of the covenant of good faith and fair dealing," (Dkt. No. 8, Attach. 1 at 2), the complaint's inclusion of the words "negligently" and "willfully" could conceivably contemplate a tort cause of action, (Compl. ¶¶ 25, 26). Whether the second cause of action sounds in contract or tort, however, is of no moment; "state-law claims are preempted by the NFIA" whether contractual in nature or "sounding in tort[,] but intimately related to the disallowance of [an] insurance claim." *C.E.R. 1988, Inc. v. The Aetna Cas. & Sur. Co.*, 386 F.3d 263, 268, 272 (3d Cir. 2004) (internal quotation marks and citations omitted).

[6] Notably, Southbridge does not argue that its second cause of action arose from misrepresentation in the *procurement* of the SFIP, but seemingly concedes that it relates to the *handling* of its claim. *See, e.g.*, *C.E.R. 1988, Inc. v. The Aetna Cas. & Sur. Co.*, 386 F.3d 263, 271 n.12 (3d Cir. 2004) (noting that whether the NFIA preempts state law claims arising out of the procurement of a policy is less well-settled). Thus, the court need not discuss this distinction.

objectives . . . to reduce fiscal pressure on federal flood relief efforts");
*Gibson*, 289 F.3d at 949 ("[M]ost courts have consistently found that NFIA preempts state law claims that are based on the handling and disposition of [Policy] claims.").

Ignoring this case law, and the numerous district court decisions from across the country cited in Standard Fire's moving brief, (Dkt. No. 8, Attach. 1 at 5-6), Southbridge relies entirely on a recent decision from the District of Connecticut, *Ragusa Corp. v. Standard Fire Ins. Co.*, No. 3:12-CV-01609, 2014 WL 1281314, at *3-4 (D. Conn. Mar. 27, 2014). In *Ragusa*, the plaintiffs brought an action against Standard Fire to recover amounts allegedly due under a flood insurance policy, alleging, among other things, breach of contract, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing. *Id.* at *1-2. Like here, Standard Fire argued that the plaintiff's extra-contractual claims should be dismissed as preempted by the NFIA. *Id.* at *3. Dismissing this argument, the court cited a provision of the regulations issued by FEMA—titled "Limitation on Litigation Costs"—which, in essence, permits the FEMA Office of the Chief Counsel, together with the Federal Insurance Administrator, to determine that certain "litigation is grounded in actions by

the [WYO c]ompany that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence," and refuse to reimburse the WYO company for any award or judgment for damages and litigation costs. *Id.* at *4 (citing 44 C.F.R. pt. 62, app. A, Art. III(D)(3)).[7] Based solely on this language, the court concluded that extra-contractual claims could survive because "the flood insurance regulations issued by FEMA contemplate the possibility of negligence and/or other litigation actions against insurance companies that fall significantly outside the scope of the Standard Flood Insurance Policy Arrangement." *Id.*

This court, however, is satisfied that *Ragusa* is an outlier, and is

---

[7] The full text of 44 C.F.R. pt. 62, app. A, art. III(D)(3) is as follows:

> Limitation on Litigation Costs.
>
> a. Following receipt of notice of such litigation, the FEMA Office of the Chief Counsel ("OCC") shall review the information submitted. If the FEMA OCC finds that the litigation is grounded in actions by the Company that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence, then the FEMA OCC shall make a recommendation to the Federal Insurance Administrator regarding whether all or part of the litigation is significantly outside the scope of the Arrangement.
>
> b. In the event the Federal Insurance Administrator agrees with the determination of the FEMA OCC under Article III, Section D.3.a then the Company will be notified in writing within thirty (30) days of the Federal Insurance Administrator's decision that any award or judgment for damages and any costs to defend such litigation will not be recognized under Article III as a reimbursable loss cost, expense or expense reimbursement.

persuaded instead that the limitation on litigation costs provision in FEMA's regulations is neither an explicit nor implicit invitation for extra-contractual claims.  Indeed, dicta from the Third Circuit's decision in *C.E.R.* seems to support this notion: "FEMA ordinarily will be responsible financially for the costs of defending a lawsuit against a WYO company.  The efficiency goals of the Program, on balance, would better be served by requiring claimants to resolve their disputes by means of the remedies FEMA provides."  386 F.3d at 271; *see Wright I*, 415 F.3d at 390 (noting that, in *C.E.R.*, the Third Circuit "implicitly rejected the argument that state law tort claims against WYOs should not be preempted because FEMA might refuse to reimburse the WYO in some cases").  Additionally, the District of New Jersey has explained that, "because the determination by an executive branch official as to whether to deny a WYO company reimbursement . . . can only be made *after* a money judgment has been awarded," allowing certain claims to survive "on the presumption that a FEMA official will later make a determination that [the insurance company]'s costs are non-reimbursable in reality asks this court to usurp the FEMA official's role and make a determination before-the-fact that the official will judge the funds non-reimbursable."  *Residences at Bay Point Condo. Ass'n, Inc. v.*

*Standard Fire Ins. Co.*, No. 13-02380, 2013 WL 6252692, at *12 n.9 (D.N.J. Dec. 4, 2013). The court declines to usurp that decision-making here.

Thus, the court agrees with the majority of courts that have opined on this issue, including those cited at length in Standard Fire's moving brief, (Dkt. No. 8, Attach 1 at 5-6), and holds that Southbridge's second cause of action is preempted by federal law. Accordingly, Southbridge's second cause of action is dismissed.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Standard Fire Insurance Company's partial motion to dismiss (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED** that Southbridge's second cause of action, along with its requests for extra-contractual damages, costs, and disbursements, are **DISMISSED**; and it is further

**ORDERED** that the parties notify Magistrate Judge David E. Peebles in order to schedule further proceedings in accordance with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 16, 2014
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court

13